Veronika Fabian, State Bar 018770
Hyung S. Choi, State Bar 015669
CHOI & FABIAN, PLC
1423 S. Higley Rd., Suite 110
Mesa, AZ 85206
Tel:   (480) 517-1400
Fax:   (480) 517-6955
Attorneys for Plaintiffs Harwood

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jacqueline and Jack Harwood,<br><br>Plaintiffs,<br><br>vs.<br><br>Midland Funding, LLC, Midland Credit Management, Inc., Jerold Kaplan Law Office, P.C.,<br><br>Defendants. | No. _____<br><br>**COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1. Defendants continued to collect on an alleged debt after the Harwoods put them on notice that the Account had been paid in full. Defendant Midland Funding LLC ("Midland"), through Defendant Jerold Kaplan Law Office P.C. ("Kaplan Law Office") even sued the Harwoods in Arizona justice court, forcing Plaintiffs to retain counsel and incur attorney's fees. Midland then abandoned the lawsuit, resulting in dismissal of the lawsuit, without prejudice. Plaintiffs have been trying to resolve this issue for over two years. Plaintiffs

bring this action to remedy Midland's violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and invasion of the Harwoods' privacy, and to seek declaratory relief that they do not owe the alleged debt.

## JURISDICTION

2. Jurisdiction of this Court arises under 15 U.S.C. §1692k(d), 15 U.S.C. § 1681(p), 28 U.S.C. §1337(a).

## PARTIES

3. Plaintiffs Jack and Jacqueline Harwood ("the Harwoods") are husband and wife and reside in Peoria, Maricopa County, Arizona.

4. The Harwoods are natural persons, allegedly obligated to pay a debt, and are thus "consumers" as defined by the FDCPA.  15 U.S.C. § 1692a(3).

5. The Harwoods are natural persons and are thus "consumers" as defined by § 1681a(c) of the FCRA.

6. Midland is an Arizona limited liability company.

7. Midland regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to another.

8. Defendant Midland Credit Management, Inc. ("MCM") is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6).

9. MCM is a Kansas corporation registered to do business in Arizona.

2

10. MCM regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to another.

11. MCM is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6).

12. At all relevant times, MCM acted as the agent of, and on behalf of, Midland, in its collection efforts with respect to the Harwoods.

13. Defendant Kaplan Law Office is an Arizona corporation.

14. Kaplan Law Office regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to another.

15. Kaplan Law Office is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6).

16. At all relevant times, Kaplan Law Office acted as the agent of, and on behalf of, Midland, in its collection efforts with respect to the Harwoods.

**FACTUAL ALLEGATIONS**

17. On June 23, 2003, Jacqueline Harwood obtained a loan from HSBC - North America d/b/a Household Finance Corporation and Beneficial ("HSBC"), by endorsing a check she received in the mail from HSBC made payable to her in the amount of $5,000.28. ("the Account"). (A copy of that check is attached as Exhibit A).

18. Ms. Harwood obtained this loan for personal, family, and household purposes.

3

19. The Harwoods experienced financial difficulties and Ms. Harwood had trouble making payments on her loan.
20. The Harwoods then contacted HSBC to negotiate a payment schedule.
21. The parties reached an agreement over the phone.
22. On June 24, 2004, HSBC sent Ms. Harwood a confirming letter regarding the agreed settlement amount of $4,289.00 in accordance with the following terms:

   1st payment due by 6/30/04 for $948.55
   2nd payment due by 7/30/04 for $835.09
   3rd payment due by 8/30/04 for $835.09
   4th payment due by 9/30/04 for $835.08
   5th payment due by 10/30/04 for $835.08

   (A copy of Household's confirming letter is attached as Exhibit B).
23. The Harwoods made the above-referenced payments in a timely manner.
24. On June 30, 2004, they paid $950.66 by electronic fund transfer.
25. On July 30, 2004, they paid $842.09 by electronic fund transfer.
26. On August 30, 2004, they paid $894.33 by electronic fund transfer.
27. On September 23, 2004, they paid $835.08 by check number 5320.
28. On October 24, 2004, they paid $835.08 by check number 5346.
29. Thus, the Harwoods paid a total of $4,357.24 to HSBC.
30. HSBC did not notify Ms. Harwood that these payments were deficient in any way.

31. Two years later, on October 5, 2006, Ms. Harwood received a letter from HSBC stating that she was in default on her loan obligations and that she owed HSBC $4,101.44.  (A copy of HSBC collection letter is attached as Exhibit C).

32. The Harwoods notified HSBC that they had paid in accordance with their settlement agreement.

33. Subsequently, Ms. Harwood received a collection letter, attempting to collect the same debt, from Commercial Recovery Systems on October 11, 2007, November 10, 2007, and January 10, 2008.

34. The Harwoods again notified Commercial Recovery Systems that this account had been paid in full.

35. Upon information and belief, Midland subsequently purchased the Account.

36. At the time Midland purchased the Account, the account was allegedly in default.

37. Midland assigned the account to MCM for collection.

38. In October of 2008, MCM sent Ms. Harwood a letter attempting to collect on the Account.

39. Ms. Harwood sent a letter to MCM refusing to pay and explaining that the account was paid in full as of October 30, 2004.  (A copy of Ms. Harwood's letter is attached as Exhibit D).

5

40. In response, on January 20, 2009, MCM sent her a letter with only a copy of the original check that Ms. Harwood had signed and continued to request payment on the Account.

41. On January 29, 2009, MCM sent Ms. Harwood yet another letter attempting to collect on the Account. (A copy of MCM's letter is attached as Exhibit E).

42. On March 18, 2009, Kaplan Law Office, on behalf of MCM, sent Ms. Harwood a letter stating that it represented Midland regarding the Account and requesting that she make arrangements to pay the alleged debt. (A copy of that letter is attached as Exhibit F).

43. In that letter, Kaplan Law Office stated, as required by 15 U.S.C. 1692g, that

> If you notify us in writing within the thirty day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you. Upon written request, within the 30 days stated above, we will provide you with the name and address of the original creditor, if different from the current creditor.

44. On April 10, 2009, Ms. Harwood sent a letter to Kaplan Law Office disputing that she owed the debt. (A copy of that letter is attached as Exhibit G).

45. Kaplan Law Office did not verify the debt and instead filed a lawsuit against the Harwoods on April 29, 2009, on behalf of Midland. (A copy of the complaint is attached as Exhibit H).

6

46. In the complaint, Midland asserted, among other things, "that balance remaining due and unpaid on said contract at the time of the filing of this complaint is in the amount $4,101.44. That said Defendant(s) has/have failed and refused to pay said balance and that said balance is justly due and owing to plaintiff herein."

47. In its complaint, Kaplan Law Office also asserted that said contract does provide for "reasonable attorney fees which are in the amount of not less than $1107.39 as provided by Contract, if upon default,..."

48. Attached to the Complaint was the affidavit of Elizabeth Neu, a "specialist" and purported custodian of records for MCM. (A copy of that affidavit is attached as Exhibit I).

49. In the affidavit, Ms. Neu, on behalf of MCM, certified that she had "possession of the books and records pertaining to the account" and that the balance of the account was "4,104.44."

50. Upon information and belief, Ms. Neu did not have possession of admissible books and records pertaining to the account, which showed that the balance of the account was $4,104.44.

51. MCM's misrepresentations were material.

52. The Harwoods were forced to retain counsel.

7

53. The Harwoods filed an answer and incurred both attorney's fees and filing fees on or about October 14, 2009.

54. In that answer, the Harwoods asserted that Midland's claim was barred by, among other things, accord and satisfaction.

55. On November 24, 2009, the Harwoods, in connection with their disclosure statement, provided Kaplan Law Office and Midland with all of their bank statements and other documentation supporting their position that they had paid the account in full.

56. On December 8, 2009, Kaplan Law office provided a disclosure statement with a single attachment, which was the initial check that effected the loan. (A copy of the initial disclosure statement is attached as Exhibit J).

57. Kaplan Law Office provided no documents supporting its allegation that the balance on the loan was $4,104.44.

58. Kaplan Law Office's disclosure did not address the Harwoods' claim that they had paid the account in full.

59. Despite the evidence provided by the Harwoods, Kaplan Law Office and Midland continued to prosecute the case in justice court.

60. The Court set the matter for a pre-trial on January 8, 2010.

61. Kaplan Law Office did not appear for that pre-trial.

62. The Harwoods' counsel called in to appear telephonically for that pre-trial.

63. When Kaplan Law Office did not appear, the pre-trial was cancelled.

64. The Justice Court dismissed Midlands' claims without prejudice. (A copy of the Justice Court's order is attached as Exhibit K).

65. The Harwoods incurred attorney's fees and costs in defending the action.

### MCM'S Credit Reporting

### Mr. Harwood's Experian Credit Report

66. As of November 12, 2009, HSBC was reporting the account on Mr. Harwood's Equifax credit report as "Settlement Accepted on this Account Paid Charge Off."

67. MCM, however, was reporting the account to Experian on Mr. Harwood's credit report as "Unknown- Credit Extension, Review, or Collection."

68. MCM did note on Mr. Harwood's Experian credit report that Mr. Harwood disputed the account information.

69. Upon information and belief, MCM did not report the account information on Mr. Harwood's Equifax or TransUnion credit reports.

70. Mr. Harwood holds a security clearance and applies for jobs involving a security clearance.

71. Those employers generally conduct a background check including pulling his credit report.

9

72. Upon information and belief, the MCM item on Mr. Harwood's credit report will negatively affect his ability to obtain a job.

73. In March of 2010, Mr. Harwood disputed the MCM item on his Experian credit report through Experian.

74. Upon information and belief, Experian forwarded Mr. Harwood's dispute to MCM.

75. Upon information and belief, MCM did not verify the information in Mr. Harwood's credit reporting as being accurate.

76. As a result, the item was deleted from Mr. Harwood's Experian credit report. (A copy of Experian's response to Mr. Harwood's dispute is attached as Exhibit L).

### Ms. Harwood's Equifax Credit Report

77. As of November 12, 2009, MCM was reporting the item on Ms. Harwood's Equifax credit report with a balance of $4,101.00 and "At least 120 days or more than four payments past due COLLECTION ACCOUNT."

78. MCM did not note on Ms. Harwood's Equifax account that Ms. Harwood disputed the alleged account.

79. In March of 2010, Ms. Harwood disputed the MCM item on her Equifax credit report through Equifax.

80. Upon information and belief, Equifax then forwarded Ms. Harwood's dispute to MCM.

81. Upon information and belief, MCM verified to Equifax, that the information, as contained in Ms. Harwood's Equifax credit report, was being reported accurately. (A copy of Equifax's response to Ms. Harwood's dispute is attached as Exhibit M).

82. However, Ms. Harwood's credit report now reflects that Ms. Harwood disputes the account information.

### Ms. Harwood's TransUnion Credit Report

83. As of November 12, 2009, MCM was reporting the account with a balance of $4,101.00 and as a "Collection Account" on Ms. Harwood's TransUnion Credit Report.

84. MCM noted on Ms. Harwood's TransUnion Credit Report that "account information disputed by consumer."

85. In March of 2010, Ms. Harwood submitted a dispute to TransUnion explaining that she has settled the account.

86. Upon information and belief, TransUnion forwarded Ms. Harwood's dispute to MCM.

87. Upon information and belief, MCM verified to TransUnion that the information, as contained in Ms. Harwood's TransUnion credit report, was

11

being reported accurately. (A copy of TransUnion's response to Ms. Harwood's dispute is attached as Exhibit N).

### Ms. Harwood's Experian Credit Report

88. MCM did not report the account on Ms. Harwood's Experian credit report.

### The Harwoods' Emotional Distress Damages

89. Ms. Harwood suffers from Chronic Obstructive Pulmonary Disease, which is a severe form of Asthma.

90. Defendants' actions with respect to the Account, which Ms. Harwood did not owe, have aggravated her asthma.

91. It has also caused her undue stress, anxiety, and sleeplessness.

92. Defendants' actions have also caused Mr. Harwood undue stress and anxiety.

### COUNT I: VIOLATION OF THE FDCPA

93. Defendants' acts and omissions constitute violations of the FDCPA, including, but not limited to:

   a. The use of false, deceptive, or misleading representations or means in connection with the collection of a debt; 15 U.S.C. § 1692e;

   b. Misrepresenting the character, amount, or legal status of the debt; 15 U.S.C. § 1692e(2)(A);

   c. Communicating or threatening to communicate to any person information which is known or which should be known to be false,

12

including the failure to communicate that a disputed debt is disputed; 15 U.S.C. § 1692e(8);

d. The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer; 15 U.S.C. § 1692e(10);

e. The use of unfair or unconscionable means to collect or attempt to collect any debt; 15 U.S.C. § 1692f; and,

f. Continuing to attempt to collect the debt after the Harwoods had disputed it and before providing Harwoods with verification of the debt; 15 U.S.C. § 1692g(b).

94. As a result of Defendants' violations of the FDCPA, the Harwoods suffered damages in an amount to be determined by this Court.

95. Midland is therefore liable to the Harwoods in the amount of the Harwoods' actual damages, statutory damages in the amount of $1,000, and costs and attorney's fees.  15 U.S.C. § 1692k(a).

### COUNT II: VIOLATION OF THE FCRA
### 15 U.S.C.§ 1681s-2(b)(1)

96. Upon receiving notice of Ms. Harwood's disputes from TransUnion and Equifax, MCM failed to reasonably investigate those disputes in violation of the FCRA. 15 U.S.C.§ 1681s-2(b)(1).

13

97. MCM knowingly and intentionally failed to investigate those disputes in conscious disregard of the rights of the Harwoods.

98. MCM willfully and/or negligently violated the provisions of the FCRA.

99. As a result of MCM's violations of the FCRA, the Harwoods suffered damages in an amount to be determined by this Court.

100. The Harwoods are therefore entitled to recover actual or statutory damages, whichever is greater, punitive damages, and attorney's fees and costs. 15 U.S.C. § 1681n(a).

## COUNT III: INVASION OF PRIVACY

101. Defendants' debt collection efforts with respect to the Harwoods were unreasonable.

102. Consequently, Defendants' acts and omissions constitute an invasion of privacy.

103. As a result of Defendants' invasion of privacy, the Harwoods suffered damages in an amount to be determined by this Court.

104. In invading the Harwoods' privacy, Defendants acted with an evil mind, intending to injure the Harwoods or consciously disregarding the substantial risk that its conduct would cause significant harm to the Harwoods.

105. The Harwoods are therefore entitled to recover both actual and punitive damages.

**COUNT IV: DECLARATORY RELIEF**

106. Ms. Harwood reached a settlement agreement with Midland's predecessor in interest, HSBC.

107. Ms. Harwood made her payments in accordance with her settlement agreement with HSBC.

108. As assignee of the contract, Midland has no greater rights than HSBC against the Harwoods.

109. Thus, the Harwoods are entitled to declaratory relief that she no longer owes on the alleged debt.

**JURY DEMAND**

110. The Harwoods demand a jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court award them:

    a.    Their actual damages;

    b.    Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2) against each Defendant;

    c.    Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1681n(a);

    d.    Declaratory relief that the Harwoods no longer owe the alleged debt;

    e.    Punitive damages;

f.   Attorney's fees and costs in bringing this action pursuant to 15 U.S.C. § 1692k(a)(3), 15 U.S.C. § 1681n(a), A.R.S. § 12-341.01;

g.   Prejudgment and post-judgment interest; and,

h.   Such other relief as it deems just.

RESPECTFULLY SUBMITTED on April 23, 2010.

            CHOI & FABIAN, PLC


            /s/ Veronika Fabian
            Attorneys for Defendant Harwoods